(No. 4639— ▮▮▮▮▮▮)

WILLIAM J. ANDERSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 21, 1955.*

JOHN R. SNIVELY, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

This case comes before us on respondent's motion to dismiss the complaint on the jurisdictional ground that the claim has been barred by the lapse of time required for filing claims in this Court, as set forth in Sec. 22 of the Court of Claims Law, Sec. 439.22, Chap. 37, Ill. Rev. Stats. (1953 State Bar Association Edition), which reads as follows:

"Every claim cognizable by the Court and not otherwise sooner barred by law shall be forever barred from prosecution therein unless it is filed with the Clerk of the Court within two years after it first accrues, saving to infants, idiots, lunatics, insane persons and persons under other disability at the time the claim accrues two years from the time the disability ceases; provided, that any officer or enlisted man in the National Guard, Naval Reserve or Illinois Reserve Militia who sustained an injury to his property, arising out of and in the course of active duty while lawfully performing the same, at any time within 5 years prior to the effective date of this amendatory Act may file a claim therefor within two years after the effective date of this amendatory Act. (As amended by Act approved July 23, 1951.)"

The complaint in this case was filed on September 2, 1954, and alleges that claimant was a prisoner in the Illinois State Penitentiary, Joliet Branch, on the 14th day of May, 1951, at which time he was injured in his person, while performing assigned duties in the prison furniture factory.

Counts I and II of the complaint allege that such injuries were caused by certain negligent acts and omissions, and a non-compliance by respondent of the Health and Safety Act of the State of Illinois, as a result of which the end of the left little finger of claimant was severed. Claimant further contends that respondent thereafter negligently treated his injuries.

Count III of the complaint is based solely upon allegations that the injuries of claimant were improperly treated by respondent. Claimant prays for damages in the amount of $100,000.00.

First, as to Counts I and II of the complaint, it is the well settled rule in this Court that persons incarcerated in a penal institution are not, by the mere reason of such incarceration, under disability within the contemplation of the savings clause of Sec. 22 of the Court of Claims Act. *McElyea* vs. *State,* 7 C.C.R. 69; *Robertson* vs. *State,* 19 C.C.R. 146; *DeVore* vs. *State,* 21 C.C.R. 106; *Atkinson* vs. *State,* 21 C.C.R. 429; *John Davis* vs. *State,* case No. 4589, opinion filed on January 11, 1955.

Although it is apparent from the face of the complaint that more than two years elapsed from the happening of the accident to the filing of the complaint, it is claimant's contention that the previous holdings of this Court should be overruled on the theory that a person imprisoned does come within the savings clause as a person "under other disability", although not specifically designated as one of the exceptions to the operation of Sec. 22.

We do not consider this point well taken.

The general rule of law appears to be that exceptions to a statute of limitations will not be implied, and that imprisonment will not suspend the running of the time for the institution of an action, unless the applicable statute expressly so provides. In Volume 34 of American Jurisprudence, p. 171, Limitation of Actions, D. Imprisonment, Sec. 214 Generally, this general rule is set forth:

"In accordance with the established rule that exceptions to the statute of limitations will not be implied, it is the prevailing view that imprisonment will not suspend the running of the time for the institution of suit unless the statute expressly so provides. It has been held that a person imprisoned is not within a provision in a limitation statute making an exception as to persons under legal disability, especially where under the laws of the particular jurisdiction there is no disability in a convict to institute a civil action."

It further appears to be the general rule that a general disability clause in a statute of limitations does not include imprisonment as an exception to the operation of the statute.

In a recent annotation found in 24 A.L.R. (2d) 618, entitled "Imprisonment as Tolling Statute of Limitations", at pp. 619 and 620, this rule is recognized.

The same question involved herein was presented to the Court in the case of *Musgrave* vs. *McManus* (1918), 24 N. M. 227, 173 p. 196, L.R.A. 1818F 348, which case is cited in the above annotation. There, the court in construing the meaning of an exception to the New Mexico Statute of Limitations, which was similar to that of Sec. 22 of our Court of Claims Law, said at page 351 of the L.R.A. citation:

"It is our conclusion that the legislature of New Mexico had in mind the general rule that exceptions contained in statutes of limitations in favor of particular persons or classes are to be construed with strictness, and that implied or equitable exceptions are not to be grafted upon the statute, where the legislature has not made the exception in express words in the statute. Further, that the legislature, having before it the Missouri statute, which, in express terms, excepted persons imprisoned for less than life, elected to depart from the language of that statute, and from the effect of imprisonment under the English Statute of Limitations, which unquestionably can have no application to our changed circumstances and conditions. In view of these conclusions we cannot hold that the term 'under any legal disability', as contained in our statute, should be construed as including persons imprisoned."

Claimant contends that the general statute of limitations of the State of Illinois, which specifically includes as an exception a person "imprisoned on a criminal charge" should be ingrafted upon the Court of Claims Law under the "persons under other disability" phrase.

We do not agree with claimant, but, on the contrary, feel that the Legislature by not following the form of the general statute of limitations has signified an unwillingness to create an exception in favor of prisoners,

who have claims against the State of Illinois, and bring actions in the Court of Claims.

The provisions of Sec. 22 of the Court of Claims Law are jurisdictional, and, therefore, until the Legislature specifically creates such an exception, we will consider that one does not exist. Therefore, Counts I and II of the complaint must be dismissed.

In Count III of the complaint, it is alleged that on May 14, 1951, the date of the accident in question, claimant was immediately taken to the prison hospital for treatment of his injured finger, but that respondent negligently and carelessly failed to properly and skillfully treat his injuries. Claimant further alleges:

"8. That by reason of the premises, and as a direct and proximate result thereof, claimant became sick, sore and disabled and has so remained, that he suffered and still suffers great physical pain; that the bone of his finger became so diseased that it was necessary for respondent, on the 25th day of January, 1952, to amputate his finger one-fourth inch below the distal joint, that respondent, on the 18th day of December, 1952, next amputated his finger one-half inch below the second joint, that respondent, on the 27th day of March, 1953, amputated the balance of his finger, that in so doing respondent made an incision two inches in length along the side of his hand, that he believes that his hand and then perhaps his arm may have to be amputated, that he has lost the grip of his hand, that his injuries are permanent and lasting, and that he has been refused treatment by respondent. . . ."

It is apparent from the face of the complaint that the first date mentioned, namely, January 25, 1952, is more than two years prior to the filing of the complaint, and that, therefore, any claim for negligent treatment on and prior to that date is barred by the lapse of time under Sec. 22 of the Court of Claims Law.

With respect to the amputations of December 18, 1952 and March 27, 1953, and the treatments connected therewith, it is to be noted that they are within the two year period next preceding the filing of the action.

The respondent contends, however, that the limitation period began to run from the happening of the accident, rather than the acts of amputation, and cites as authority therefor the case of *Gangloff* vs. *Apfelback*, 319 Ill. App. 596. It was there alleged that, in March of 1936, a physician set a broken arm, but, when the cast was removed, the elbow was locked. Heat treatments were given for about six months, after which the physician informed the patient that an operation would be necessary to relieve the condition of the arm. After the operation in June, 1936, in which there was a severance of the nerves, muscles and ligaments, the patient lost the power of movement in his fingers, and was told that it was due to a "nerve involvement". Two additional operations were performed, the physician assuring the patient the "nerve involvement" would be eradicated, and the use of his fingers restored. These results were not produced, and treatment was continued until nearly four years after the first operation. The patient then finally discovered that his arm was irreparably injured. He then brought a malpractice action, and the court, in dismissing the action, and holding that the statute of limitations began to run at the time of the first operation, stated at page 608 of the opinion:

"As heretofore pointed out, plaintiff does not contend that either of the later operations or the treatments applied caused the injury for which the suit is brought. He testified that the numbness or paralysis of his fingers and hand became apparent immediately after the first operation in 1936, and he was apprised by the physician that it was due to a nerve involvement. Subsequent surgery and treatments were calculated to remedy this unfortunate condition, but were resorted to without avail. The complaint is based principally upon allegations that injury or severance of the ulnar and radial nerves in performing the operation caused the irreparable injury, and the evidence clearly indicates that the loss of movement and function of his fingers and hand immediately followed the first operation. Under the weight of authority his cause of action accrued in 1936, and since suit was not instituted until 1941, we think the court properly held that the statute had barred recovery."

Similarly, in the instant case, there are no allegations of negligent and careless treatment with respect to the latter two amputations referred to in the complaint.

Claimant contends, however, that the instant case is not a malpractice suit, and, therefore, the above cited case does not apply. It appears to us that, although the action is not against a physician personally, it is an attempt to charge the same elements as would be involved in a malpractice suit against a physician.

Also, the principle of law, upon which the court in the above decision relied, is one of a general nature that runs through the law of tort whether the case be one of malpractice or otherwise. In Volume 34, American Jurisprudence, Limitation of Actions, Sec. 160, the general rule on this subject is set forth as follows:

". . . As a general rule, where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action, and is not legally severable from the consequences. It is from then that the statute begins to run, and not from the time of the damage or discovery of the injury. It is immaterial whether the conduct out of which the cause of action arises is the breach of an implied contract or the affirmative disregard of some positive duty, in either case, the liability arises immediately on the breach or disregard of duty, and an action to recover the damages, which are the measure of such liability, may be immediately maintained."

It appears to us that claimant could only maintain his action in the event one or both of the latter amputations and treatments, administered in connection therewith, were negligently and carelessly done, aside from any question of negligence in connection with the original injury and treatment. This factor does not appear from the complaint, and we will not presume that such facts exist. In considering the questions presented by this

motion, and the pleadings in general, we must construe the complaint, together with all reasonable presumptions, intendments and inferences contained therein against claimant. *Wright* vs. *Illinois Central Railroad Company,* 119 Ill. App. 132 at 144; *Garofalo Company, Inc.* vs. *St. Mary's Packing Company,* 339 Ill. App. 412; *Eugene Fuhrer, Et Al* vs. *State,* case No. 4592, order handed down on May 11, 1954.

Claimant must bear the burden of pleading sufficient facts to state a cause of action within this Court's jurisdiction. These facts not appearing from the complaint, we hold that the latter amputations and treatments in connection therewith are likewise barred by Sec. 22 of the Court of Claims Law.

The motion to dismiss the complaint and each Count thereof is, therefore, granted, and the case is dismissed.