EDITH BUEHLER, Plaintiff-Appellant, *v.* TOYNAN CONSTRUCTION COMPANY *et al.*, Defendant-Appellees—(TOYNAN CONSTRUCTION COMPANY, Counterplaintiff-Appellant, *v.* ROETH & CUTLER, INC., Counterdefendant-Appellee.)

(No. 54403; ▮▮▮▮▮▮▮▮▮▮

First District—May 17, 1971.

Kirkland, Ellis, Hodson, Chaffetz, & Masters, of Chicago, (Leonard M. Ring, William H. Symmes, and John M. O'Connor, Jr., of counsel,) for appellant.

Pretzel, Stouffer, Nolan & Rooney, of Chicago, (William P. Nolan and Joseph B. Lederleitner, of counsel,) for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Plaintiff is the widow of Carl Buehler, who died on August 2, 1963, as a result of injuries sustained when he fell from a scaffold during the construction of the Practical Arts Building at Northern Illinois University in De Kalb, Illinois. Suit was brought pursuant to the provisions of the Structural Work Act (Ill. Rev. Stat., ch. 48, secs. 60—69 (1969) ), against Toynan Construction Company (Toynan), Roeth & Cutler, Inc., (Roeth) and Samuelson and Sandquest (Samuelson) a copartnership. Toynan was the general contractor and Samuelson was the architect for the project. Roeth was a subcontractor engaged by Toynan for the installation of certain translucent panels in a skylight. Pursuant to a subcontract with Roeth, Hamilton Glass Company (Hamilton), decedent's employer, supplied the necessary labor for the installation of the panels. After issue was joined on the complaint and defendants' answers thereto, several counterclaims for indemnity were filed by the defendants. Toynan filed counterclaims against Roeth and Hamilton. Samuelson counterclaimed against Toynan, Roeth and Hamilton, and Roeth filed a counterclaim against Hamilton. On March 4, 1969, Roeth moved for summary judg-

ment against the plaintiff and counter-plaintiffs Toynan and Samuelson. The motion was supported by the affidavit of Albert Cutler, a vice-president of Roeth. No counter-affidavits were filed and on June 13, 1969, Roeth's motion was granted and judgments were entered against plaintiff and counter-plaintiffs Toynan and Samuelson. Only the plaintiff and Toynan have appealed therefrom.

Plaintiff contends that the entry of summary judgment was improper in that a genuine issue of material fact exists as to whether or not Roeth "had charge of" the work within the meaning of the Structural Work Act. Toynan contends (1) that Roeth clearly "had charge of" the work under the provisions of their contract and cannot escape liability thereunder merely by subcontracting the work to Hamilton, and (2) that an implied term in any contract for construction is that the work will be performed in a reasonably safe manner. The facts follow.

The plans and specifications for the construction of the building called for the installation of skylights. Roeth executed a contract with Toynan by the terms of which Roeth was to "furnish and *install*" (emphasis ours) translucent skylight panels. Roeth ordered the necessary materials from the Kallwall Corporation, Central Steel and Wire Company and the Ability Engineering Company. On June 4, 1963, Roeth retained Hamilton, decedent's employer, to provide the labor necessary to set the panels and to caulk and glaze the interior and exterior sides of the skylight. On July 19, 1963, Albert Cutler, a vice-president of Roeth, went to the job site to discuss with Carl Buehler, a supervisor for Hamilton, the manner in which the caulking would be used. Cutler avers in his affidavit that he did not discuss the manner in which the work would be performed, that at no time did he assist, direct or superintend the actual installation work and that he did not supply any equipment, tools or scaffolds, nor did he ever discuss what equipment should be used. Nuts and bolts which he had purchased for connecting portions of the skylight were left by him at the construction site. Cutler averred that he did not return to the job site until after the decendent had been reported injured and that no other representatives of the defendant Roeth visited the site prior to the accident. That affidavit as attached to defendant's motion for summary judgment. No counter-affidavits were filed and the court entered judgment as hereinbefore set forth.

Our Civil Practice Act provides that the moving party is entitled to summary judgment if the pleadings, depositions and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat., ch. 110, sec. 57(3) (1969).)

Plaintiff's sole contention is that the trial court erred in entering sum-

mary judgment in favor of defendant and against plaintiff, since there exists a genuine issue of material fact as to whether or not Roeth had charge of the work on the skylight. It is undisputed that before a defendant will be held liable under the provisions of the Structural Work Act he must be shown to have had charge of that phase of the work the performance of which resulted in injury to the plaintiff or the plaintiff's decedent. (*Huckabee v. Bell & Howell, Inc.,* 47 Ill.2d 153, 265 N.E.2d 134.) In the instant case Roeth executed a contract with Toynan by the terms of which they were to "furnish and *install* Kallwall skylights" (emphasis ours) pursuant to building specifications.

■■ Roeth argues that through a series of purchase orders covering all labor and materials necessary for the installation of the skylight panels, they divested themselves of any *direct* connection with the work and therefore as a matter of law were not persons "having charge of" the work under the statute. To be in charge of the work within the meaning of the statute, however, does not require the exercise of *direct* supervision or control. In *Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316, 211 N.E.2d 247, the court said (pp. 321-22):

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould,* 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.'"

■■ While it has been held that an owner may effectively insulate himself from liability under the statute by employing an independent contractor to assume all responsibility for the work, a subcontractor obligated by contract to complete a specific phase of the work cannot escape liability merely by selecting others to discharge this obligation and then plead as a defense his failure to exercise any control over the construction involved. In *Louis v. Barenfanger,* 39 Ill.2d 445, 236 N.E.2d 724, the court in construing the Structural Work Act said (p. 448):

> "The words of a statute should be construed to give effect to the legislative intention, which must be ascertained not only from the language of the entire act, but from the evil to be remedied and the object to be attained."

The objective of the Structural Work Act is to provide protection to those engaged in the extra-hazardous occupation of structural work by requiring adherence to certain standards for such work and by providing both criminal penalties and civil liability for failure to comply therewith.

(*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill.2d 305, 175 N.E.2d 785.) The Act is applicable to those persons "having charge of" the work; that is, not only those who exercise direct supervisory control, but also those who under the circumstances of the particular case have assumed responsibility therefor. (See *Larson v. Commonwealth Edison Co., supra.*) We conclude that Roeth had charge of the work under their contract with Toynan and retained charge within the meaning of the statute, notwithstanding their subcontract with Hamilton. Accordingly, the trial court erred in granting Roeth's motion for summary judgment.

Toynan contends that the trial court erred in entering summary judgment for Roeth on the counterclaim for indemnity. Breach of the implied obligation to perform the work in a reasonably safe manner constitutes a sufficient ground for a counterclaim on the theory of indemnity. (*Moroni v. Intrusion-Prepakt, Inc.*, 24 Ill.App.2d 534, 165 N.E.2d 346.) Our holding on Point One that Roeth, by virtue of their contract with Toynan, had continuing responsibility for performance of the work notwithstanding the purchase orders thereafter issued, disposes of any argument that the duty of installing the skylights in a reasonably safe manner was delegated. Roeth had charge of the work in question and was obligated to execute reasonable care in the performance thereof regardless of whom he engaged for that purpose.

■■ Roeth argues that Toynan was obligated to provide the subcontractors' employees with a safe place to work and therefore is precluded from seeking indemnity against a subcontractor specifically engaged to do the work. It is now firmly established however that a party seeking indemnity is not barred merely because both parties may have violated the provisions of the Structural Work Act. (*Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630; *Jones v. McDougal-Hartmann Co.*, 115 Ill.App.2d 403, 253 N.E.2d 581; *Rovekamp v. Central Construction Co.*, 45 Ill.App. 2d 441, 195 N.E.2d 756.) In *Miller v. DeWitt, supra*, the court quoted with approval the following language from *Rovekamp* (pp. 291-92):

> "[a]lthough the liability imposed by the [Structural Work] Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the [injured] plaintiff— thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statu-

tory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury."

The judgments entered in favor of Roeth on the complaint and counterclaim are reversed and the cause is remanded to the trial court for further proceedings not inconsistent with the views herein expressed.

Judgments reversed and cause remanded with directions.

BURKE, P. J., and LYONS, J., concur.